and Mr. Daugherty for the appellant, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors. Peter Daugherty here on behalf of the defendant appellant, Robin Niceta. May it please the court. Ms. Niceta is the defendant in the case. She was a caseworker working for Arapahoe County Department of Human Services. In this case arises from a state dependency and neglect case that occurred in Arapahoe County. As a result of her investigation, two children were removed from the home and a dependency proceeding continued. The plaintiffs in this case bring two claims for relief, a procedural due process claim as well as a substantive due process claim. In the lower court, we brought two primary defenses which are interlocutory at this point, the testimonial immunity defense as well as the qualified immunity defense. And I will turn to the qualified immunity as it relates to whether this court has jurisdiction, whether it was sufficiently pled. But I do want to touch base and just give you a brief overview of the allegations in this case. The plaintiff alleges that caseworker Ms. Niceta misrepresented facts in obtaining a verbal removal order and admitted facts that would be relevant to whether an ex parte order of removal would be appropriate. Also, there's allegations that Ms. Niceta was provided misrepresentations during her testimony at the hearing and that provides largely the basis for the procedural due process claim. Initially, it's our position that the trial court erred in not granting absolute testimonial immunity. Ms. Niceta's involvement in this case was not a direct result of her testimony. Her involvement in this case is fairly narrow. She was involved in some preliminary investigations where she made phone calls to the family. She then obtained a verbal removal order which was obtained on February 1st of 2021. And then there was a hearing, a contested hearing that took place on February 9th. You said her involvement was narrow? The time scope was narrow. She was the only witness, right? The only investigator involved in this case prior to the removal? She was the only investigator as it relates to the buryments, correct. But her involvement began after there was initially a report that was provided by the Aurora Police Department that there had been a discord chat, that there had been a cyber alert, that there was interference. That there had been inappropriate allegations of inappropriate conduct that was occurring. Is the discord chat in the record anywhere? Why isn't it? I couldn't find it. The discord chat is not in the record. It was on a motion to dismiss. We didn't have that available. But in the verbal removal order, there is, and it would be in the appendix number two on page three, is the actual verbal removal order allegations. And the plaintiffs are not alleging that any of the statements that are paraphrased there are inaccurate. Rather, what they're arguing is that Ms. Nasita's use of those was somehow slanted or tainted. Giving an example, by saying that it was inappropriate for her to raise the fact that there had been a prior investigation involving Mr. Berryman that took place in 2017. That part, she does raise that, and they say, well, and that was unfounded. Well, if you look at the verbal removal order, that's exactly what she states. She states that there was a prior incident here in 2017 that Caitlin Berryman said she was going to recant her accusations, and she did, in fact, recant those accusations. And then it goes through a process where she says there's been ongoing allegations of misuse and abuse as part of a cryout that occurred over a two-year period. And so it's because of that that the Aurora Police Department then brought this. I thought, in looking at it, I thought that the BVRO was referring to an alleged sexual assault that occurred when the older daughter was six years old. And that that's the primary bad act that the allegations focus on as the basis for the removal. Maybe you can explain to me why they would suspect some type of ongoing sexual exploitation. In the verbal removal order, and this is, again, pulled from the Discord chat at Paragraph 2, Paragraph 13, by way of example, reads, Caitlin has made numerous outcries to the online boyfriend that her father, Mr. Berryman, physically abuses her in the following ways. Smacking Caitlin in the face, shoved Caitlin into a stove causing her to burn her arm, grabbed Caitlin by the hair, shoved her into the stair banister, shoved Caitlin down the stairs, and cut Caitlin on the shoulder with a knife. There's allegations here where Caitlin, to the cry out as part of the communications with the boyfriend, says that she is disappointed in her mother in not protecting her or her sister. There's also allegations that there are ongoing efforts to communicate with the mother regarding... If we can step back for a second, we're here on a motion to dismiss, so our focus is whether the complaint plausibly alleges a substantive due process, a procedural due process claim that's clearly established. Is this argument that there's no constitutional violation or that it's not clearly established? What's your primary response? District Court found both prongs were met here. I just want to know where the mistake was by the District Court. First, if we look at the testimony immunity issue, that would remove all of the testimony that took place. We're on qualified immunity. So if we turn to the qualified immunity issue, first if we... The information that Ms. Nasita had was she was... And it's really on both prongs. We're arguing that there's not a constitutional violation and that in the event that there was, it was not clearly established. How do you distinguish the Mallett case, then, that suggests that a social worker can be liable for making false statements to the juvenile court? The Mallett case has so many disparate facts that it's really not applicable to this particular instance. In Mallett, that was a case in which there were photographs of a young girl which had been taken five months previously. There were bruises, and what the investigators had learned during the course of that was there was really no imminent threat. There was no imminent threat with respect to the risk to the child. The photographs had been taken by an uncle who was not in the vicinity, had moved back to New York. The bruises that they saw, a physician's assistant looked at those and said, I don't see those as bruises. You're going to have to get another medical opinion. Despite all of that, it still moved forward. So in that circumstance, this court did, in fact, find, yes, these types of misrepresentations would be inappropriate. But if we fast forward and we take a look at, say, the case NEL versus Gildner, which NEL versus Gildner, which is the Tenth Circuit site for that is 780 Fed Appendix 7. It's a 2019 case. There, the court went through an analysis where similar allegations were made by the parents, saying that this had been an inappropriate verbal removal order in that case. But looking at, again, on a motion to dismiss, what the court reviewed, and this came out of Kansas, what the court reviewed was the child in need of care petition, which was the underlying document, and compared that with the actual allegations that were being made in the complaint and found that most of the allegations were actually not being, the way that they were, the conclusory allegations of the complaint were not actually supported by the actual documents. And we're asking for the same analysis here. Look at what actually was included in the verbal removal order and how it's being represented. What was the basis for Ms. Nasita's justification to remove the younger daughter? The younger daughter was at the same age as the misconduct had first started, allegedly, as related to Caitlin Berryman. And so she represented these facts to the court, stating that these events had occurred and there is concern that this would, in fact, be repeated with the younger daughter as well. And even in Caitlin's own cryouts, she said she didn't want to be removed from the house because she wanted to be there to protect her younger daughter, her younger sister. So included within that was this thread of potential risk, potential threat, in which both Caitlin cried out. The VRO says there's grave concern that the younger daughter is in danger of being sexually assaulted by father if this has not already occurred. Yes. Is there any basis to believe that sexual abuse had already occurred? There was an absence of information as to whether, so no, there was nothing there to demonstrate that. Wasn't that more or less made up by Ms. Nasita? I don't believe so. I think that was an opinion based upon her experience as a caseworker. And going back to the case law that this court has established as far as how do you treat a caseworker, caseworkers are making decisions to help to protect the individual well-being of children, and there needs to be some accommodation to the fact that they are trying to reach out and try to make these decisions. There were interviews of these children after they were taken out of the home, right? There was of one of the two daughters, yes. But we don't have what happened in those interviews or what the content was yet? We do not know. What we do know is that after the, as I said, on February 1 he had the verbal remover, he had the petition that was filed on February 2nd, had a hearing February 9th. Fast forward in July of that year, there was a deferred adjudication where the parents essentially conceded to the allegations and then moving forward they went through counseling and went through a treatment plan. Then at the end of that, the following year were returned. On the issue of just quickly the procedural due process, in this court's decision of Everhart, which was issued I believe in the year 2020 but was since sealed afterwards, the case was notable for really two things, saying on a procedural due process claim also involving a caseworker, finding that if there is that opportunity to be heard, there is also an opportunity to engage in a proceeding, and in that case the fact that the parents also admitted to the allegations, that they received the procedural due process that they were required. Counsel, I don't want to eat up all your rebuttal time, because the district court has a finding that you did not. In our motion, and we were very cognizant of Montoya versus Vigil in trying to articulate and ensure that we have pled this. In our initial introduction we said we're bringing this under a jurisdictional issue as a Rooker-Feldman. Also we mentioned specifically absolute immunity, procedural immunity. We go through a lengthy analysis of the first prong of both a substantive due process and procedural due process claim, and then we include and say we are requesting or bringing a qualified immunity claim as it relates to both the procedural due process claim and the substantive due process claim. So we wanted to ensure that we checked those marks so that it was very clear that that basis, because we wanted this court to have the jurisdiction to be able to raise those concerns and address those arguments. So did the district court just get that wrong? I mean the district court says in a single sentence without citation to any legal authority. That is incorrect. In our motion to dismiss we included about a page and a half where we were, about a page, where we had already discussed the first prong of both of those over several pages of both substantive due process as well as procedural due process. And then at the tail end we described the fact that this is the type of accommodation that's given to case workers, described the fact that what is needed, and we also included a summary of, there is no comparable case on the clearly established that would show that once you have an individual who is given this information, I see my time is up, if I may finish. Who has this information from a third party, a discord chat, there's information that's intertwined in that, and that information is presented to the court, and then you go through proceedings in which notice is provided, opportunity to cross-examine, and then they have the parents then essentially admit to the allegations to say that under that rubric, you're going to be exposed to civil liability under a procedural or substantive due process claim without any type of shocks to conscience. That's where we argue that we did include that as part of our argument in the underlying case. Thank you, counsel. Opposing counsel, Mr. Berriman, Mr. Berriman is sitting with us in the gallery this morning. My name is Elliot Singer and I represent the appellees in this case. May it please the court. Your honors, this family, the Berriman family, suffered the gravest constitutional injustice that I can think of as a father, which is having their family separated for over a year and a half as a result of misrepresentations of fact, omissions of fact, and distortions of fact. For these reasons, we respectfully request that this court affirm the lower court's denial of Ms. Nyseta's motion to dismiss. I want to clarify something to begin with. We have actually three claims for relief, your honors, violation of procedural due process, violation of substantive due process, and we have a 1983 claim in which the violations of the Fourth Amendment are also alleged. The reason why is because Nyseta did nothing short of seize these children in violation of the family's constitutional rights, while also committing violations of their procedural and substantive due process. What's your best case on the Fourth Amendment claim? Malik, which is that a caseworker such as Nyseta cannot seize children from the school or from the family home without ensuring that constitutional rights are protected. The quote, Judge Tinkovich's, from that case, it was clearly established law that government officials' procurement through distortion, misrepresentation, and omission of a court order to seize a child is a violation of the Fourth Amendment. And wouldn't that, it seems like that would run to the children rather than to the parents, a seizure claim? Maybe it's a conceptual difficulty, but it seems it ought to be their claim and not the parents. We believe that all four of them had their constitutional rights violated. If it's the court's position that the children only have the seizure claim, I'm fine with that. And all four of them had their due process rights violated because all four of them have the right to be a family under the U.S. Constitution. There are three procedures which we believe were violated here. I want to focus on the February 1st, 2021 verbal removal order, Your Honors. If there was every time in which due process protection should be afforded, it's in a situation like this. Before I started taking these cases, I had no idea that a caseworker could call up the sitting state court judge, make verbal allegations, and then get a verbal authorization that doesn't even have to be reduced to writing until the next morning, allowing a caseworker... Well, that's permitted under state and county law, right? Yes, sir. I mean, ex parte proceedings happen all the time, and it's a judicial proceeding to some extent. There's a judge, a neutral third party. So there is a process there, even setting aside its one-sided process, but there's a neutral adjudicator, and after these orders are issued, it's temporary, right? And didn't your client, after the removal, have an opportunity to contest the removal and engage in some type of process to get the children back? Correct. And they stipulated to neglect, and the parents did, and then it took another year for the children to be returned. What do we do about that? To address the latter... I mean, it seems like there's a lot of process there, and I know you weren't the lawyer in the beginning, but they had a lawyer, and, you know, there was...this county attorney was involved, there were judges involved. I mean, it seems like there's a lot of process. Understood. If I could address Your Honor's prior point, the best way I can sum it up is by saying that even if you admit to neglecting your children, and the point that I think was left out of Appellant's argument, is that this wasn't...the removal wasn't actually based on the discord allegations, it was based upon false allegations that the family wasn't cooperating in the investigation. Earlier on in January, all of the discord allegations were known to Nyseta. She did not move for the removal of the children at that time. She asked, well, what are the allegations? And filed a petition to investigate, which was granted by the court. The family said, great, we'll participate in this investigation. They hired a lawyer. They made sure that lawyer made the children available for interviews outside of the parents' presence, which they were ordered to do. I don't mean to mischaracterize things, but this entire removal occurred because of a scheduling conflict. There is a time set for the children to be interviewed on February 1st. If I can bring Your Honor's back to... Well, to be fair, the petition does include these VRO...the VRO contains the discord allegations, and that's the substantive basis. I can understand the process about the delay allegations, but the discord allegations are a central part of the removal allegations. They're in there, Judge. I believe that the central reason... And why aren't they enough? They're not enough because I believe the central reason for the removal was that the family wasn't cooperating when they were. We hear that the family's putting up roadblocks. They're not making the children available for interviews. They're in grave danger. We have no idea what's going on, when in reality, what was happening and what the complaint extensively alleges is that they were cooperating. Then that...we're in qualified immunity land, and that takes us to what clearly established case says, you know, lack of cooperation will support a procedural or substantive due process claim. What's the clearly established law that says...that would tell NACEDA that lack of cooperation is a constitutional violation? Could Your Honor rephrase the question? I want to know what clearly established case would alert Ms. NACEDA that bringing a petition like this for non-cooperation would violate the Constitution. I think the cases are O'Connell v. Tuggle, Snell v. Tonell, and then Malik, the case which we've been discussing today, which is that she distorted and misrepresented this family's lack of cooperation with the investigation. That's what it all comes back to. That she was telling this district court judge, these children need to be removed, they're in grave danger, because we have no idea what's going on, this family is not being cooperative, when she knew that the exact opposite was true. She knew that they had hired lawyers, she knew that the children were going to be made available for interviews, and the fact that it needed to be rescheduled for two years, that was a mistake. The fact that it needed to be rescheduled for two days later, somehow triggered her to remove the children. All she needed to do was investigate, all she needed to do was complete these interviews two days later. Nothing had changed in between January, when the discord allegations emerged, to when she asked for the verbal removal order. The only thing that had changed was that their lawyer needed to reschedule the interview.  Didn't the Berryman's lawyer have a chance to participate in a hearing where Ms. Nacita testified? And didn't they have an opportunity to, right, they could have cross-examined her on the point you're making about manipulating the delay to get an ex-partee order? I mean, didn't they have the opportunity to clarify whether that was, you know, a mistake? I know that that proceeding is not in the record, correct? The transcript? The transcript, yes. No, sir. But anyway, their attorney had a chance to challenge the timing and the circumstances around the ex-partee proceedings, didn't it? They did, nine days later, after the civil rights violation had already occurred. Okay. Counsel, could I get you to talk a little bit about the absolution of the absolute immunity issue? Yes, Your Honor. Regarding absolute immunity, I'm aware of the case law, beginning with the Supreme Court and as articulated by this Court, that facially appears to give absolute testimonial immunity to caseworkers. But I think that still has to be evaluated with the functional test, excuse me, discussed in Thomas v. Kaven, 765 F. 3rd, 1183, case from this Court in 2015. And I think that what my interpretation of these cases is, is that if a state actor is acting in an advocacy role, right, if you're a prosecutor making an argument on behalf of the state, if you're a judge using the facts at your disposal to make a decision, that is something to which you are entitled to absolute immunity. But if you're in an investigative capacity, if you're gathering facts, if you're presenting evidence, and you know that it's false, and you know that your prosecutor, your lawyer, the judge is going to rely on that information, you are not entitled to absolute testimonial immunity. Let me stop you there. So in the broad overview of what Ms. Nassita did, didn't she testify at a hearing, and was that not, was that, did that not qualify as an absolute testimonial immunity? Yes, Your Honor. Did that not qualify for absolute immunity? Isn't there a testimonial absolute immunity? And you're telling me no. No, Your Honor. We agree with the trial court's conclusion that she was acting in an investigative capacity. At the hearing? Yes, Your Honor. Okay, now tell me why is that so? She was testifying based on alleged interviews that she had conducted with the children, facts that she had gathered. She wasn't advocating. Well, she was testifying as to what she had already done, right? She was testifying based on in between when the children had been removed and that date of testimony. Right. That's the, I mean, I guess I'm having trouble understanding your argument or the district court's opinion that that was investigation at that point. Wasn't it testimony about investigation? Correct, Your Honor, which I believe doesn't entitle her to absolute testimonial immunity because she was acting in an investigative capacity. And if I may, Your Honor, even if this court concludes that she was entitled to testimonial immunity, there were still two pretestimonial procedures, the February 1st, 2021 VRO, the February 2nd, 2021 statements that she submitted as part of the position, which still caused civil rights violations and which would still, in my opinion, allow the case to go on because those civil rights violations had already occurred outside of the testimony. So I still think we win even if absolute testimonial immunity is found here. Does that, would that make no difference? That's kind of what you're suggesting. I guess I'm asking you about your case. It's your claim. Would it make no difference if Ms. Nacidic received absolute immunity for her testimony at the hearing? Would that make a difference? It would not make a difference, Your Honor, because there were two pretestimonial procedures which violated their constitutional rights. So even if this court disagrees with the trial court on the testimonial immunity issue, the order itself should still be upheld. The reason why it's included in there is not only because of the testimony that she offered there, but because of the egregious falsehoods which were offered there, which appear for the first time about the parents sexually trafficking, actively sleeping with the children and bathing with the children, that the children fantasize with them. It just, it strengthens the case, in our opinion. Thank you. Of course, Judge. It doesn't sound like the estoppel arguments are particularly at issue. I mean, I think the case is at issue here today, but I just want to briefly raise in my last minute and a half that the underlying state court action does not stop or prevent us from bringing this civil rights action. The deferred adjudication issue was only on custody. In fact, at the end of the day, under the Rooker-Feldman doctrine, these parents were not the state court losers. They won. Their case was dismissed voluntarily by the county. They got custody back of their children. What's present before this court is the civil rights violations, which occurred against them. There were no opposite factual positions taken. Civil rights violations were not an issue at all in the underlying case. This case is purely about constitutional violations. We have three cases which all state that Ms. Niseta was on notice. We have three cases which all state that distortions of fact, misrepresentations cannot be used to remove a child. The information that she presented to the state court judge was that this family needed to be separated because they were not cooperating, that over and over again in the complaint is alleged to be false, and for these reasons, we respectfully ask that this court affirm the lower court's denial of Ms. Niseta's motion to dismiss. Thank you, counsel. We appreciate the arguments. Just clarifying, counsel are excused, and the case shall be submitted.